# United States District Court
## District of Massachusetts

FILED
IN CLERKS OFFICE

2010 SEP 20   P 1: 08

Terri Judge-Gilmore
        Plaintiff

v.

Bank of New York Mellon, and
Encore Credit Receivables
Trust 2005-1
        Defendants

10cv11600 NMG

## Original Complaint
## for Injunction and Other Equitable Relief and Damages

Plaintiff Ms. Terri Judge-Gilmore, through below-signed counsel, files a complaint to secure injunctive relief and other equitable relief including rescission and restitution against defendants for engaging in unfair or deceptive acts or practices in violation of the

- Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692,

- Truth in Lending Act, 15 U.S.C. § 1601 ("TILA") (as amended by the Home Ownership and Equity Protection Act, 15 U.S.C. 55 1602(aa) and 3.639 ("HOEPA"),

- Massachusetts Consumer Credit Cost Disclosure Act, Mass. Gen. Laws ch. 140D § 1, et gea. ("CCCDA"),

- Massachusetts Consumer Protection Act, M.G.L. ch. 93A, along with

- The common law torts of

    o breach of the covenant of good faith and fair dealings,

1

o breach of contract, and

o intentional infliction of emotional distress

for its predatory lending practices and foreclosing on Plaintiff's home while it was under Chapter 13 Bankruptcy Protection.

## Jurisdiction and Venue

1. This Court has subject matter jurisdiction over this action under 28 U.S.C. §1332, because the matter in controversy arises between citizens of different states and the damages, the amount in controversy, exceeds $75,000.

2. Venue in this Court is proper under 28 U.S.C. §1391(a)(2) because the facts of the case were almost exclusively in Massachusetts; Defendants do business within the Commonwealth of Massachusetts.

## Parties

3. Plaintiff Terri Judge-Gilmore is a natural person residing at the single-family home of 35 Chipman Street, Dorchester, Massachusetts (zip code 02124).

4. Bank of New York Mellon f/k/a Bank of New York ("BNY") is a corporation located at One Wall Street, New York, NY (zip code 10286); Bank of New York is the indenture trustee for Encore Credit Receivables Trusts 2005-1.

5. Encore Credit Receivables Trust 2005-1 ("Encore") is a trust located at 155 N. Lake Avenue, Pasadena, California, 91110-

7137, and is apparently the holder of the promissory note ("the note").

6. Select Portfolio Services, Inc. is currently not listed as a defendant, but may be added later upon Plaintiff-realized justification during anticipated discovery.

## Brief Facts

Encore

7. Encore is apparently the holder of the note on the home that has been apparently improperly foreclosed while it was under Chapter 13 Bankruptcy protection.

8. Plaintiff has worked with Bank of New York ("BNY") instead of Encore for most of the related process as BNY has initiated associated correspondence.

9. Claims below regarding BNY may appropriately relate to Encore directly, but discovery is required to further any such potential allegation.

Bank of New York

10. Bank of New York ("BNY") is one of over 65 residential mortgage servicer companies committed to the Home Affordable Modification Program ("HAMP") through a formal Participation Agreement with the United States of America.

11. Also, as a recipient of Troubled Asset Relief Protection ("TARP") funds, and pursuant to the Participation Agreement, BNY is subject to the U.S. Treasury's

modification   program   guidelines   for   the   Making   Home
Affordable Program.

12.   Such guidelines, promulgated on March 4, 2009, clearly
require

> "[A]ny foreclosure action...be temporarily suspended during the
> trial period, or while borrowers are considered for alternative
> foreclosure prevention options.   In the event that the Home
> Affordable   Modification   or   alternative   foreclosure   options
> fail, the foreclosure action may be resumed."

The guidelines further require, in summary, a screening for

borrowers who write to their lender for assistance even if

not  in  default,  a  Net  Present  Value  ("NPV")  analysis,

which, if positive, requires the offering of the Making

Homes Affordable ("HMA") Modification, if the NPV analysis

does not qualify for the MHA program, the lender must seek

alternative   foreclosure   prevention   including   alternative

modification programs, deed-in-lieu and short sales, and

borrowers  in  litigation  can  qualify  for  a  modification

without waiving legal rights in such litigation.

13.   Under  HAMP,  a  participating  servicer  is  required  to

gather information and, if appropriate, offer the homeowner

a Trial Period Plan ("TPP").   The TPP consists of a three-

month period in which the homeowner makes mortgage payments

based  on  a  formula  that  uses  the  initial  financial

information provided.   If the homeowner complies with the

TPP agreement, then the second stage of the HAMP process is

triggered, in which the homeowner is offered a permanent modification.

14. BNY has received associated funds, and pursuant to the U.S. Treasury, their acceptance of same requires that it suspend all foreclosure operations against the homeowner until such time as the services, tests, and potential modification opportunities promulgated by the U.S. Treasury are provided to the homeowner.

15. BNY, as a servicer, receives $1,000.00 for each HAMP modification.

16. Under HAMP, a servicer is obligated by contract and common law to act in good faith and deal fairly with each borrower.

17. If Plaintiff failed to qualify for a HAMP-based loan, she was not so informed; and if she failed, Defendant BNY also failed to offer her a substitute (in-house) alternative loan modification as required under HAMP procedures.

Terri Judge-Gilmore

18. Ms. Judge-Gilmore's husband suffered a severe stroke in 2008 that left him unable to work for a significant period of time.

19. Plaintiff Judge-Gilmore has debt that was comparable to her and her husband's earnings, and tried to make payments to all of her creditors without the income of her husband;

this is the primary reason for the initial falling-behind on her mortgage payments.

20. Plaintiff is now in a position to continue to make modified mortgage payments.

21. In December 2009, Plaintiff was approved for the HAMP Trial Payment Period ("TPP") – a three-month payment program that, if successfully performed by Plaintiff, would qualify her for continued modified loan implementation for the remainder of the new/extended loan period.[1]

22. Plaintiff was not informed, though, that this was a TPP; she assumed that it was the modified loan that she was making payments on.

23. Plaintiff was not informed of how the interest payment would be placed against her principal – specifically, what portion of her payment would be used to pay-down the principal on the loan.

24. As of January 2010, Plaintiff was sending $1,500 per month for the HAMP, paid to Select Portfolio Services, Inc. – the company servicing the note for Encore.

25. Plaintiff made all three of her payments, but never received notification that the TPP had ended nor that the new loan period had begun; as such she continued to make her payments through June 2010.

---

[1] Plaintiff is not guaranteed to remain in the program if she fails to make timely payments.

26.  In June, Plaintiff's May payment was returned to her,
stating in effect that 'the funds did not represent the
total amount due ($74,429.01)' despite the fact that she
continued to follow the requirements of the TPP; and was
informed that a foreclosure sale was forthcoming.

27.  Throughout the TPP, it would appear that Defendant BNY
failed to make associated tax and/or insurance payments.

28.  Plaintiff filed for and was under Chapter 13 Bankruptcy
Protection on 22 July 2010 through 19 August 2010.

29.  The Defendants' foreclosure attorney (noted only as
Ablitt Scofield, a Woburn, Massachusetts, law firm) was
notified of the bankruptcy yet waited until after it was
dismissed on 19 August 2010 (for failure to timely provide
appropriate documentation) to send letter dated '02 August
2010' stating that the property had been sold to BNY.

30.  The property was sold while it was under bankruptcy
protection.

31.  If Ms. Judge-Gilmore had been approved under HAMP, her
mortgage would have been modified by adding the amount of
her arrearage to the principal of her first mortgage loan,
and then dramatically reducing the amount of the interest
rate thereon, leaving her with a manageable monthly
payment.

32.   In order to be approved under HAMP, Ms. Judge-Gilmore had
to both submit certain financial documentation and make
three monthly mortgage payments.  She had complied with the
requirements of HAMP.

---

## Count I
Violation of the Fair Debt Collection Practices Act ("FDCPA")

33.   Plaintiff repeats and re-alleges every allegation above
as if set forth herein as full.

34.   Defendants appear to violate the FDCPA when choosing to
foreclose on the same property that Plaintiff was otherwise
allowed to protect while in the process of Chapter 13
Bankruptcy Protection.

## Count II
Violation of the Truth in Lending Act (as amended by the Home
Ownership and Equity Protection Act ("HOEPA")

35.   Plaintiff repeats and re-alleges every allegation above
as if set forth herein as full.

36.   Defendants appear to violate the TILA when they failed to
inform Plaintiff of the purpose and scope of her Trial
Period Plan which was defined and orchestrated/implemented
by Defendant BNY;

37.   Defendants allowed Plaintiff to make more payments than
required under the TPP and failed to inform her of the
yearly interest rate and total amount of interest to made
through the TPP or the anticipated modified loan that
Plaintiff was approved for under the HAMP guidelines.

**Count III**

Violation of the Massachusetts Consumer Credit Cost Disclosure Act

38.  Plaintiff repeats and re-alleges every allegation above as if set forth herein as full.

39.  Defendants never informed Plaintiff of the true and total cost of the interest rate being charged for the TPP where Plaintiff paid $1500 for six (6) months.

40.  Plaintiff was surprised to see that practically no money from her monthly payments went to the principal on the loan; the interest schedule was not disclosed by Defendants to Plaintiff.

**Count IV**

Violation of the Massachusetts Consumer Protection Act

41.  Plaintiff repeats and re-alleges every allegation above as if set forth herein as full.

42.  Along with not informing Plaintiff of the financial impact of her interest rate, Defendants guile in foreclosing on property under bankruptcy protection appears to be a violation of the Massachusetts Consumer Protection Act.

**Count V**

Breach of Contract

43.  Plaintiff repeats and re-alleges every allegation above as if set forth herein as full.

44.  The Trial Period Plan Agreement constitutes a valid offer, where acceptance and execution was completed by

Plaintiff when making the associated payments which also serve as valid consideration.

45. A binding contract was formed and the failure to offer a permanent modification when Plaintiff completed the plan (under the HAMP guidelines) constitutes a breach of contract.

### Count VI
*Breach of Implied Covenant of Good Faith and Fair Dealing*

46. Plaintiff repeats and re-alleges every allegation above as if set forth herein as full.

47. Implied in every contract is a duty of good faith and fair dealing.

> "The purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance."
> Uno Restaurants, Inc. v. Boston Kenmore Realty Corp., 441 Mass. 376, 385, 805 N.E.2d 957 (2004).

BNY breached this duty by:

   a. failing to perform loan servicing functions consistent with its responsibilities;

   b. failing to properly supervise its agents and employees including without limitation, its loss mitigation and collection personnel and its foreclosure attorneys;

   c. failing to follow through on written and implied promises;

    d.  failing to follow through on contractual obligations; and

    e.  failing to give permanent modifications and other foreclosure alternatives to an otherwise-qualified homeowner.

48. Defendant BNY prematurely sold Plaintiff's house at foreclosure auction while the home was under bankruptcy protection;

49. As such, Defendant BNY has also breached the covenant of good faith and fair dealing.

50. Defendant BNY has also committed acts of unfair and deceptive business practices when selling Plaintiff's home while it was under bankruptcy protection.

51. As a result of these failures to act in good faith and the absence of fair dealing, Defendants have caused Plaintiff harm.

#### Count VII
Intentional Infliction of Emotional Distress

52.  Plaintiff repeats and re-alleges every allegation above as if set forth herein as full.

53.  The process of dealing with all of the aforementioned foreclosure issues has created sever emotional distress to Plaintiff.

54. Moreover, being informed that her property had been sold at auction while she knew the property to be protected while in bankruptcy proceedings caused Plaintiff to physically breakdown and become ill to the point of vomiting.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests the following relief:

a. Enter a judgment declaring the acts and practices of Defendant complained of herein to constitute a breach of the covenant of good faith and fair dealing;

b. Enter a judgment declaring the acts and practices of Defendant complained of herein to constitute unfair and deceptive business practices;

c. Enter individual judgments declaring the acts and practices of Defendant complained of herein in violation of the

      i. Real Estate Settlements and Procedures Act;

      ii. Fair Debt Collection Practices Act;

     iii. Truth in Lending Act;

      iv. Massachusetts Consumer Credit Cost Disclosure Act; and

      v. Massachusetts Consumer Protection Act

I

d. Provide any relief, including punitive damages, that the Court deems warranted;

e. Enjoin Defendant through a temporary restraining order for a period of time deemed appropriate by the Court, but at least as long as until Defendant has abided by its contractual obligations; and

f. Grant Plaintiff such other and further relief as this Honorable Court finds necessary and proper.

16 September 2010          Plaintiff Terri Judge-Gilmore,
                           through her counsel


                           E. James Perullo, Esq.
                           BBO# 668740
                           167 Beech Street, #1
                           Manchester, NH   03103

                           (978) 404-6642
                           E.James.Perullo@gMail.com

## *Certificate of Service*

~~Eff~~ 17

I hereby certify that on 16 September 2010~~, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:~~

And I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:

```
           BNY Mellon
counsel: Ablitt|Schofield
         304 Cambridge Road
         Woburn, MA 01801

         fax: (781) 246 8994


16 September 2010            E. James Perullo
```